UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CASE FILE NO. 12-56638
(D.C. Case No. 12-cv-03626-JFW-PJW)


JANE DOE NO. 14,

Plaintiff-Appellant,

v.

INTERNET BRANDS, INC., d/b/a
MODELMAYHEM.COM,

Defendant-Appellee.

---

**BRIEF OF APPELLANT**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF LOS ANGELES

---

HERMAN LAW
Jeff Herman
Stuart S. Mermelstein
*Attorneys for Jane Doe No. 14*
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
Tel: 305-931-2200
Fax:305-931-0877

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.............................................................1

  A. BASIS OF SUBJECT MATTER JURISDICTION IN THE DISTRICT COURT .................1

  B. THE ORDER OF THE DISTRICT COURT IS FINAL AND APPEALABLE .....................1

  C. THE NOTICE OF APPEAL IS TIMELY FILED .......................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ..............................2

STATUTORY PROVISIONS ....................................................................2

STATEMENT OF THE CASE....................................................................2

  A. NATURE OF THE CASE ...........................................................2

  B. COURSE OF PROCEEDINGS AND DISPOSITION BELOW ........................................3

STATEMENT OF FACTS RELEVANT TO THE

ISSUE SUBMITTED FOR REVIEW ............................................................4

SUMMARY OF ARGUMENT ...................................................................8

ARGUMENT ....................................................................................9

I.   THE STANDARD OF REVIEW FOR THE

     ISSUE ON APPEAL IS *DE NOVO* .................................................9

II.  THE COMMUNICATIONS DECENCY ACT

     DOES NOT BAR JANE DOE'S NEGLIGENCE CLAIM ............................10

  A.  JANE DOE'S CLAIM DOES NOT TREAT INTERNET BRANDS

      AS A "PUBLISHER OR SPEAKER" UNDER NINTH CIRCUIT PRECEDENT.............10

  B. JANE DOE'S NEGLIGENCE THEORY OF LIABILITY DOES NOT AFFECT INTERNET

  BRAND'S STATUS AS A "PUBLISHER OR SPEAKER" OF THIRD PARTY CONTENT .....16

  C. THERE IS NO BASIS TO DISTINGUISH *BARNES* OR *LANSING*................................20

III. CASES IN WHICH CLAIMS WERE BARRED

     UNDER THE CDA §230(C) ARE DISTINGUISHABLE .............................23

IV.  THE TORT CLAIM BROUGHT BY JANE DOE
       IS CONSISTENT WITH THE CDA .............................................................26

CONCLUSION ...................................................................................................30

STATEMENT OF RELATED CASES.........................................................30

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Ballard v. Uribe*, 41 Cal. 3d 564, 224 Cal. Rptr. 664 (1986) ................................ 16

*Barnes v. Yahoo, Inc.* 570 F.3d 1096 (9th Cir. 2009) ...................................... passim

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ......................................................... 10,15

*Chi Lawyers Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ................................................................13

*Diamond v. Diehr*, 450 U.S. 175 (1981) ................................................... 14

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ......................................... 11, 28

*Doe v. Myspace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ................................. 23, 24, 25

*Edwards v. Marin Park, Inc.* 356 F.3d 1058, 1061 (9th Cir. 2004) ........................9

*F.T.C. v. Accusearch, Inc.*, 2007 WL 4356786 (D. Wyo. 2007)............................21

*Fair Hearing Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .............................................................27

*Hall v. North American Van Lines, Inc.*,
476 F.3d 683 (9th Cir. 2007) ...............................................................9

*Jennifer C. v. Los Angeles Unified School District*,
168 Cal. App. 4th 132086 Cal. Rptr. 3d 274 (2009) .............................................19

*Julie Doe II v. MySpace, Inc.*,
175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (2009) ................................. 23, 24, 25

*Lansing v. Southwest Airlines Co.*,
2012 Ill. App. (1st) 101164, ___ N.E. 2d ___ (2012).......................... 20, 21, 22, 23

*Pamela L. v. Farmer*, 112 Cal. App. 3d 206, 169 Cal. Rptr. 282 (1980),..............17

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
1995 WL 323710 (N.Y. Sup. Ct May 24, 2995) ....................................................27

*Tarasoff v. Regents of the University of California*,
17 Cal. 3d 425 131 Cal. Rptr. 14, 23 (Cal. 1976)..................................................16

*Thompson v. County of Alameda*,
27 Cal. 3d 741 167 Cal. Rptr. 70, 76-78 (1980) ...................................................17

*U.S. v. Buckland*,
289 F.3d 558 (9th Cir. 2002) ...................................................................................27

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)...........................1

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ................... 26, 28, 29

**Statutes**
28 U.S.C. §1291 .........................................................................................................1
28 U.S.C. §1332(a) ....................................................................................................1
47 U.S.C. §230(c) ............................................................................................. passim

**Other Authorities**
Restatement 2d Torts §302B.............................................................................. 16, 17
Lukmire, *Can the Courts Tame The Communications Decency Act?: The
Reverberations of Zeran v. America Online*, 66 N.Y.U. Ann. Surv. Am. L. 371
(2010)……………………………………………………...…………....26-29

**Rules**
Fed.R.Civ.P. 12(b)(6).................................................................................. 3, 4, 9, 30

iv

# STATEMENT OF JURISDICTION

## A.  Basis of Subject Matter Jurisdiction in the District Court

Plaintiff-Appellant Jane Doe No. 14 ("Jane Doe") appeals from the Final Order entered on August 16, 2012, by the Honorable John F. Walter, United States District Court Judge for the Central District of California.  (ER 5-9).[1]  This action was brought in the district court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332(a), as it is between citizens of different states and the amount in controversy exceeds the jurisdictional minimum of $75,000.

## B.  The Order of the District Court is Final and Appealable

This Court has jurisdiction over a timely appeal from the final decision of the district court.  28 U.S.C. §1291.  The Order dated August 16, 2012 was a final decision as it dismissed the action against Defendant-Appellee Internet Brands, Inc. d/b/a modelmayhem.com ("Internet Brands") in its entirety with prejudice. (ER 8).  *See WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135-36 (9th Cir. 1997).

## C.  The Notice of Appeal is Timely Filed

Jane Doe filed her Notice of Appeal on September 5, 2012, twenty (20) days after the Court entered its Final Order on August 16, 2012.  This appeal is therefore timely. Fed.R.App.P. 4(a)(1).

---

[1] "ER" in this Brief refers to the Appellant's Excerpts of Record.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether Internet Brands is a "publisher or speaker" for purposes of Plaintiff's claim, which is therefore barred under the Communications Decency Act of 1996, 47 U.S.C. §230(c), where it alleges that Internet Brands negligently failed to warn its modelmayhem.com members that they had been targeted in a fraudulent rape scheme.

## STATUTORY PROVISIONS

Pursuant to 9th Cir. R. 28-2.7, a copy of the pertinent statute, 47 U.S.C. §230, appears in the attached Addendum.

## STATEMENT OF THE CASE

### A.  Nature of the Case

This appeal concerns the scope and application of the bar on causes of action against internet service providers set forth in the Communications Decency Act of 1996 (CDA), 47 U.S.C. §230(c)(1).  Jane Doe alleges in her Complaint a negligent failure to warn claim that does not treat Internet Brands as a "publisher or speaker", and is therefore not barred by the CDA.

This case arises from the horrific drugging and rape of Jane Doe by two individuals, Lavont Flanders and Emerson Callum, who perpetrated a scam to rape women by deceit and to videotape the rape for sale as pornography.  In this fraudulent scheme, they targeted aspiring young female models with profiles on

2

modelmayhem.com, a website intended for marketing and networking in the modeling industry. Internet Brands, the owner and operator of modelmayhem.com, learned that Flanders and Callum were perpetrating this scheme against its members, and sued the persons from whom it purchased modelmayhem.com alleging that they failed to disclose the potential liability from civil suits due to this scheme. This suit was filed before Jane Doe was targeted by Flanders and Callum in the rape scheme. At the same time, Internet Brands failed to warn its members who were vulnerable in the scheme of a real and avoidable danger. As a result, Jane Doe, a young aspiring model with a modelmayhem.com profile, was unaware of the danger posed by Flanders and Callum, and was subsequently deceived in the scam and raped in the making of a pornographic video.

## B. Course of Proceedings and Disposition Below

Jane Doe filed her Complaint in the U.S. District Court for the Central District of California on April 26, 2012. (ER 10). The Complaint alleged a single cause of action for negligence. Defendant Internet Brands filed a Notice of Motion and Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on July 3, 2012. (ER 24). Jane Doe filed a Memorandum of Point and Authorities opposing the Motion, and Internet Brands filed a Reply. (ER 25). The district court issued its Order Granting Defendant Internet Brands, Inc.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) on August 16, 2012, based on the parties' submissions

without oral argument. (ER 5-9)  The Order dismissed the action with prejudice on the grounds that it was barred by the CDA. (ER 8).

## STATEMENT OF FACTS RELEVANT
## TO THE ISSUE SUBMITTED FOR REVIEW

Internet Brands owns and operates the website modelmayhem.com, which it purchased in 2008.  (Complaint, ¶¶ 4, 17, ER 11, 15).[2]  This website is intended for use by the modeling industry, and provides a platform for professional and aspiring models to market their services. (¶ 3, ER 11).  Jane Doe was an aspiring model. She became a member of modelmayhem.com to market her modeling services and further her career in the modeling industry. (¶¶ 7-8, ER 12).

Unbeknownst to Jane Doe, two persons, Lavont Flanders and Emerson Callum, were using modelmayhem.com to lure and deceive young women with modelmayhem.com profiles, like Jane Doe, into a fraudulent scheme in which they would drug and rape the women on videotape for sale and distribution as pornography.  (¶ 9, ER 12, 13).  The scam was perpetrated in a common pattern, in which Flanders and Callum would contact a modelmayhem.com member using fake identities disguised as talent scouts, and lure them to the Miami, Florida area for a fabricated modeling audition and an opportunity for a highly desirable

---

[2] Because this is an appeal from an order dismissing the case pursuant to Fed.R.Civ.P. 12(b)(6), all citations in this section are to the Complaint filed in the district court. (ER 10-22)

4

modeling job. (*Id.*) Once at the audition, they would slip the victim a date-rape drug, and then Callum would rape the woman on videotape. (*Id.*)

In 2008, as set forth in the Complaint, Internet Brands purchased modelmayhem.com in a commercial transaction from persons identified in the Complaint collectively as "the Waitts". (ER 15). The Complaint alleges that Internet Brands then learned that the modelmayhem.com website was being used to target and victimize members in the Flanders and Callum rape scheme:

> 18. Shortly after purchasing MODELMAYHEM.COM, INTERNET BRANDS learned of the charges against Flanders and Callum, and the central role played by MODELMAYHEM.COM in the rapes of MODELMAYHEM.COM members.

> 19. In August, 2010, INTERNET BRANDS brought a claim against the Waitts, in <u>Waitt v. Internet Brands, Inc.</u>, case no. 10-CV-3006- GHK, U.S. District Court for the Central District of California. In this lawsuit, INTERNET BRANDS asserts that the Waitts failed to inform INTERNET BRANDS of the potential for civil suits against MODELMAYHEM.COM arising from the actions of Lavont Flanders.

> 20. Accordingly, on INTERNET BRANDS own admissions, it had actual knowledge no later than August 2010, that:

>> a. MODELMAYHEM.COM was being used as a means of luring unsuspecting female MODELMAYHEM.COM users, like JANE DOE, to drug and rape them,

>> b. Lavont Flanders and Emerson Callum, in particular, had used MODELMAYHEM.COM on multiple occasions to lure unsuspecting women to drug, rape and videotape them for pornography; and

> c. Flanders and Callum used MODELMAYHEM.COM as an essential element of the scheme, horrifically victimizing MODELMAYHEM.COM's members.

(ER 15, 16).

While Internet Brands sought to recover money from the Waitts because they failed to disclose the rape scam to Internet Brands in selling modelmayhem.com, it did absolutely nothing to disclose to its members the recurring and predictable acts of Flanders and Callum, or otherwise warn its female members that the fraudulent rape scheme posed a present danger to them. (¶¶ 22-28, ER 16-17). Simply by sharing its knowledge with its female members, Internet Brands could have prevented their victimization in the fraudulent scheme. (¶28-39, ER 15-18).

Because Internet Brands did not do so, Jane Doe was completely unaware of the danger posed by a supposed talent scout offering a particular opportunity to come to Miami for an audition in February, 2011. (¶ 10, ER 13) As a result, Jane Doe fell victim to the scheme: She was contacted by Flanders using a false identity, flew to Miami for a phony audition, and was then drugged and raped by Callum for a pornographic video. (¶ 11, ER 13-14).

The Complaint alleges that, given Internet Brands prior actual and particular knowledge of the perpetrators and the details of their rape scam, Internet Brands had a duty to make adequate disclosures and warn its members. (¶¶ 29-34, ER 17).

6

In failing to make any warning or disclosure to its members, whom Internet Brands knew were vulnerable targets in the scam, it breached this duty. (¶¶ 35-38, ER 17-18). As a direct and proximate cause of its negligence in failing to warn, "Jane Doe was an unknowing and helpless victim to the fraudulent solicitation, drugging and rape by Lavont Flanders and Emerson Callum." (¶ 39, ER 18).

## SUMMARY OF ARGUMENT

The CDA §230(c)(1) does not bar Jane Doe's claim for the negligent failure to warn of a known and serious danger. In particular, it does not treat Internet Brands as a "publisher or speaker" of third party content within the meaning or intent of the CDA. The district court's decision to the contrary stretches the statutory language beyond any reasonable interpretation. Moreover, barring Jane Doe's negligence claim is contrary to the Ninth Circuit's detailed analysis applying §230(c) in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009).

Jane Doe alleges a negligent failure to warn arising from Internet Brand's knowledge of the rape scam perpetrated by Lavont Flanders and Emerson Callum, in which members of Internet Brand's website, modelmayhem.com, were targeted in a fraudulent scheme. They were lured to Miami for a phony audition, and then drugged and raped for purposes of making pornography. This negligence claim does not treat Internet Brands as a "publisher or speaker" of third party content. Internet Brands' status as an internet services provider publishing content from its members is entirely peripheral to Jane Doe's claim that Internet Brands failed to warn its vulnerable members of modleymayhem.com that they were targets of a rape scam. Accordingly, the CDA §230(c)(1) does not bar Jane Doe's claim.

Jane Doe's negligent failure to warn claim is otherwise entirely consistent with the purposes and intent of the CDA to promote unfettered speech on the

8

Internet and allow Internet service providers to self-regulate by screening and removing offensive content. Jane Doe's claim does not interfere with or otherwise affect free and unfettered communications on the internet. The district court's decision to bar Jane Doe's claim under the CDA not only strays far from the statutory language, but loses sight of the statutory purpose and policy. Accordingly, the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) of Jane Doe's negligence claim on the sole ground that it is barred under the CDA is error and must be reversed.

## ARGUMENT

### I. THE STANDARD OF REVIEW FOR THE ISSUE ON APPEAL IS *DE NOVO*

The district court granted Internet Brand's Motion to Dismiss with prejudice (ER 8). This decision to grant a motion to dismiss is reviewed *de novo*. *Edwards v. Marin Park, Inc.* 356 F.3d 1058, 1061 (9th Cir. 2004). In conducting this review, the Court "accepts as true the facts as [Jane Doe] has plead them in her Complaint." *Hall v. North American Van Lines, Inc.*, 476 F.3d 683 (9th Cir. 2007).

## II. THE COMMUNICATIONS DECENCY ACT DOES NOT BAR JANE DOE'S NEGLIGENCE CLAIM

### A. Jane Doe's Claim Does Not Treat InternetBrands as a "Publisher or Speaker" Under Ninth Circuit Precedent

The district court held that Jane Doe's negligence claim is barred by the Communications Decency Act (CDA), 47 U.S.C. §230, based on the following language in the statute:

> (c) **Protection for good samaritan blocking and screening of offensive material**
> (1) Treatment of publisher or speaker
>
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. §230(c)(1). While some courts have characterized this statutory language as providing an internet service provider with "immunity",[3] in *Barnes v. Yahoo, Inc.* 570 F.3d 1096 (9th Cir. 2009), the Court noted that the CDA §230(c) is not an immunity provision: "[I]t appears clear that neither this subsection [§230(c) of the CDA] nor any other declares a general immunity from liability deriving from third party content. ... 'Subsection (c)(1) does not mention 'immunity' or any synym.' " *Id.* at 1100 *(quoting Chi Lawyers Comm. for Civil*

---

[3] See, e.g., *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003) (discussed *infra* note 5).

10

*Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008)).

Rather, for a claim to be precluded under the CDA certain elements must be demonstrated:

> It appears that subsection (c)(1) only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.

*Barnes*, 570 F.3d at 1100-1101 (footnote omitted). This test under §230(c)(1) typically hinges on the "publisher or speaker" element. The Statute "precludes liability only by means of a definition," *i.e.*, whether the defendant is being treated as a "publisher or speaker". *Id*.; *accord Doe v. GTE Corp.*, 347 F.3d 655, 659-60 (7th Cir. 2003).

In *Barnes*, the Court considered the "publisher or speaker" element, finding that the plaintiff's claim for promissory estoppel did not treat the defendant as a "publisher or speaker", and as a result, it was not barred by the CDA. 570 F.3d at 1106-08. Applying the Court's thorough and reasoned analysis to Jane Doe's negligence claim in this case compels the conclusion that it likewise is not barred by the CDA.

The Court in *Barnes* first noted that the case before it "stems from a dangerous, cruel, and highly indecent use of the internet for the apparent purpose of revenge." *Id*. at 1098. The plaintiff's former boyfriend posted a false profile of

11

plaintiff on a website run by Yahoo!, Inc. The profile contained nude photographs of the plaintiff and an open solicitation to the public for sex, along with the plaintiff's actual contact information and place of employment. *Id*. As a result, the plaintiff was "peppered" at her office with contacts from men responding to the solicitation for sex. *Id*. at 1098. The plaintiff requested removal of this content in accordance with Yahoo policy, but Yahoo failed to respond. Eventually, when the press was prepared to report on the incident, a Yahoo official contacted the plaintiff and assured her that he would take action to remove the unauthorized profile. The plaintiff relied on this promise and took no further action, yet two months passed without the profile being removed. The plaintiff then filed suit. *Id*. at 1099.

The plaintiff's complaint in *Barnes* alleged two causes of action: (i) a "negligent undertaking" claim, arising from the services that Yahoo undertook to provide in removing an unauthorized profile; and (ii) a promissory estoppel claim based on the express promise by the Yahoo official to remove the profile and the plaintiff's reliance on that promise. Id. The Court analyzed each of these claims

separately under the CDA §230(c)(1), and ultimately came to different conclusions

for each.[4] It posed the issue before the Court as follows:

> The question before us is how to determine when, for
> purposes of this statute, a plaintiff's theory of liability
> would treat a defendant as a publisher or speaker of third-
> party content.

*Id*. at 1101. In addressing this question, the Court noted that its focus must be on

the source of the duty alleged:

> [W]hat matters is not the name of the cause of action –
> defamation versus negligence versus intentional infliction
> of emotional distress – what matters is whether the cause
> of action inherently requires the court to treat the
> defendant as the "publisher or speaker" of content
> provided by another.  To put it another way, courts must
> ask whether the duty that the plaintiff alleges the
> defendant violated derives from the defendant's status or
> conduct as a "publisher or speaker." If it does, section
> 230(c)(1) precludes liability.

Id. at 1101-02.

An internet service provider's status as a "publisher or speaker" depends on

its performance of particular functions:

> We have indicated that publication involves reviewing,
> editing, and deciding whether to publish or to withdraw
> from publication third-party content. . . . Thus, a
> publisher reviews material submitted for publication,

---

[4] The Ninth Circuit in *Barnes* reversed the dismissal of the district court, which had
held that Yahoo was "'immune' against any liability for the content that
[plaintiff's] former boyfriend had posted." *Id*. at 1099.

13

perhaps edits it for style or technical fluency, and then decides whether to publish it.

*Id*. at 1102. *See also Diamond v. Diehr*, 450 U.S. 175, 182, 101 S.Ct. 1048, 1054 (1981) (in construing a statute, "[u]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"). Section 230(c)(1) thus protects from liability the decisions inherent in performing these publishing functions: "Subsection (c)(1), by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Id*. at 1105.

Application of this standard proved fatal to the plaintiff's "negligent undertaking" theory of liability in *Barnes*. The Court noted that this theory of liability was directed squarely at the reasonableness of Yahoo's publishing decision:

> [A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence. Nor can he or she escape section 230(c) by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher. The word "undertaking," after all, is meaningless without the following verb. That is, one does not merely undertake; one undertakes *to do* something. And what is the undertaking that Barnes alleges Yahoo failed to perform with due care? The removal of the indecent profiles that her former boyfriend posted on Yahoo's website. But removing content is something the publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove. In other words, the duty that

14

> Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher – the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles.

Id. at 1102-03 (emphasis supplied).[5]

In stark contrast, the failure to warn theory of liability in this case does not implicate any publishing decision. In particular, it does not concern whether to edit, remove or post on the internet particular content from third parties. In stating a claim for negligent failure to warn, Jane Doe does not contend that access to or communications from third parties on modelmayhem.com should have been altered or restricted in any way, and her claim does not depend on any such act or omission. The Complaint does not assert a cause of action in any way comparable to defamation or a tort in its category.[6] Warning its members of a known danger that they are targets in a rape conspiracy is simply not "something publishers do". See id.

---

[5] In *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003), the plaintiff, a well-known actress, sued for invasion of privacy and related torts based on matchmaker.com publishing a false profile of her on its dating website. *Id*. at 1121-22. These tort claims, alleging that the publication of the false profile on the defendant's website was wrongful, fall in the same category as the "negligent undertaking" claim that was held to be barred under §230(c) in *Barnes*. The Court in *Carafano* likewise held that the defendant could not be sued for these tort claims under the CDA. *Id*. at 122-25.

[6] See note 10 *infra* for a discussion of the torts included within the realm of "publishing" indicated in §230(c)(1).

15

## B. Jane Doe's Negligence Theory of Liability Does Not Affect Internet Brand's Status as a "Publisher or Speaker" of Third Party Content

The duty to warn alleged by Jane Doe arises in favor of one who is endangered by the conduct of a third party where the defendant "stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct." *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425, 435, 131 Cal. Rptr. 14, 23 (Cal. 1976) (citing Restatement 2d Torts §315). A duty is imposed where "the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Jennifer C. v. Los Angeles Unified School District*, 168 Cal. App. 4th 1320, 1330, 86 Cal. Rptr. 3d 274, 282 (2009) (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 573 n. 6, 224 Cal. Rptr. 664, 669 (1986)). Where, as here, the parties are in a "direct and continuing relationship", and individuals are "uniquely exposed" to danger, "it is fair to conclude that warnings given discreetly and to a limited number of persons would have a greater affect [then a warning to the general public] because they would alert those particular targeted individuals of the possibility of a specific

16

threat pointed at them." *Thompson v. County of Alameda*, 27 Cal. 3d 741, 753-55, 167 Cal. Rptr. 70, 76-78 (1980).[7]

Here, the Complaint alleges that Internet Brands had particular knowledge – far superior to that of its members – that Flanders and Callum were targeting modelmayhem.com members in a rape scam. (ER 12-13). Internet Brands was sufficiently concerned about this scheme to sue the seller of the modelmayhem.com website for failing to disclose the acts and conduct of Flanders and Callum to Internet Brands in the course of pre-closing due diligence. That suit was based on Internet Brands' claim that this scheme negatively affected the value of its modelmayhem.com property, as it created a potential for civil suits by its members victimized in the scheme. (ER 15-16). At the same time, Internet Brands failed to warn its modelmayhem.com members that they were targeted in a particular manner through fraud and deceit to be drugged and raped for the production of pornography. Ironically, Internet Brands had asserted its legal rights to be informed of the rape scheme at the same time that it kept in the dark its

---

[7] *See also Pamela L. v. Farmer*, 112 Cal. App. 3d 206, 169 Cal. Rptr. 282 (1980), where the Court held that wife of child molester owed duty to children when she invited them to swim at her home under her husband's supervision, applying Restatement 2d Torts §302B which provides: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of … a third person which is intended to cause harm, even though such conduct is criminal." *Id*., 112 Cal. App. 3d at 209-10, 169 Cal. Rptr. at 284.

17

members who were in actual danger. Jane Doe was victimized in the rape scheme, entirely unaware of the danger posed, *after* Internet Brands had sued the seller of modelmayhem.com alleging a failure to disclose.

Accordingly, the liability of Internet Brands in Jane Doe's negligence claim is derived from its superior knowledge of the danger presented to modelmayhem.com members like Jane Doe, and the foreseeability of harm resulting from the failure to warn them of this danger. It does not concern the decision whether to edit, remove or post on the Internet particular content from third parties. No such publishing decisions are implicated. The publication of third party content from modelmayhem.com members is peripheral to and unaffected by the tort theory of liability alleged in this case. Applying the analysis set forth in *Barnes*, the conclusion is unavoidable that Jane Doe's negligence claim is not derived from its status as a "publisher of speaker". The district court's conclusion to the contrary is therefore in error.

Jane Doe's negligence claim is more comparable to the plaintiff's promissory estoppel claim in *Barnes*. In discussing that claim, the Court noted that "liability for breach of promise is different from, and not merely a rephrasing of, liability for negligent undertaking. Id. at 1106. The Court held that this promise fell outside the contours of §230(c)(1) as a theory of liability, even though the promise itself concerned the performance of a publishing task:

18

The difference is that the various torts we referred to above each derive liability from behavior that is identical to publishing or speaking: publishing defamatory material; publishing material that inflicts emotional distress; or indeed attempting to de-publish hurtful material but doing it badly. To undertake a thing, within the meaning of the tort, *is* to do it.

Promising is different because it is not synonymous with the performance of the action promised. That is, whereas one cannot undertake to do something without simultaneously doing it, one can, and often does, promise to do something without actually doing it at the same time. Contract liability here would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication. …

Subsection 230(c)(1) creates a baseline rule: no liability for publishing or speaking the content of other information service providers. Insofar as Yahoo made a promise with the constructive intent that it be enforceable, it has implicitly agreed to an alteration in such baseline.

Id. at 1107-09.

The promise in *Barnes* that fell beyond the scope of §230(c)(1) is conceptually no different from the warning omitted in the instant case. This failure to warn in the face of superior information posing a grave danger to modelmayhem.com members is not a publishing decision regarding third party content, nor does it implicate any such publishing decision. It therefore is not barred by the CDA §230(c)(1).

19

### C.  There Is No Basis to Distinguish *Barnes* or *Lansing*

The limits of a claim of immunity under the CDA are further illustrated in *Lansing v. Southwest Airlines Co.*, 2012 Ill. App. (1st) 101164, ___ N.E. 2d ___ (2012).   There, the plaintiff brought a claim against the defendant airline for negligent supervision, based on its employee threatening and harassing the plaintiff using "defendant's computer, Internet and telephone facilities to send harassing and threatening e-mails and text messages", after the plaintiff had notified the airline of its employee's misconduct and the defendant airline failed to take steps to stop the alleged misconduct. *Id*. at *1.   The defendant asserted that the CDA applied to its employee's use of the internet and emails, and that it was thus immune from suit under the CDA.   The Court found that the airline was the provider of an "interactive computer service" under §230(c)(1), but nonetheless held that the CDA did not bar the plaintiff's negligence claim:

> Defendant's interpretation of subsection 230(c)(1) expands its scope beyond its language.   We … read subsection 230(c)(1) to do exactly what it says, and what it says is that an ICS [Interactive Computer Service] user or provider like defendant must not "be treated as the publisher or speaker of any information provided by" someone else. Accordingly, because subsection 230(c)(1) limits who may be called the publisher or speaker of information that appears online, it could foreclose any liability that depends on deeming the ICS user or provider a publisher or speaker, like a cause of action for defamation, obscenity, or copyright infringement. …
> ***The CDA was not enacted to be a complete shield for ICS users or providers against any and all state law***

20

> *torts that involve the use of the Internet. ... **The CDA
> does not bar plaintiff's cause of action simply because
> defendant's employee used the internet access provided
> by defendant as one vehicle to harass and threaten
> plaintiff.***

*Id*. at \*8 (emphasis supplied).  The Court further analyzed the particular negligence

claim brought by the plaintiff in the context of the CDA's language, finding that

the duty that the defendant was alleged to have violated was unrelated to any

"publishing or speaking" of content provided by another:

> We find that section 230(c) of the CDA does not apply to
> plaintiff's negligent supervision cause of action because
> ***any issue concerning whether defendant acted like a
> publisher or speaker of the offensive material is
> irrelevant to plaintiff's pled claim.***  Plaintiff's negligent
> supervision cause of action ***does not require publishing
> or speaking as a critical element,*** and holding defendant
> liable for its failure to supervise its employee after
> defendant had received notice of the employee's
> wrongful conduct does not treat defendant as if it were
> the publisher or speaker of the alleged e-mails and texts.
> …
> Here, the duty that plaintiff alleges defendant has
> violated is derived from defendant's duty to supervise
> McGrew's conduct as an employee of defendant.
> Defendant's duty to supervise its employee is distinct
> from any conduct like editing, monitoring or removing
> offensive content published on the Internet. …
> ***Clearly, the duty plaintiff alleges defendant violated is
> not derived from any behavior by defendant that is
> similar to publishing or speaking.***

*Id*. at \*9 (relying upon, among other authorities, *Barnes*, 570 F.3d at 1101-02)

(emphasis supplied). *See also F.T.C. v. Accusearch, Inc.*, 2007 WL 4356786 \*5 (D.

21

Wyo. 2007) (in unfair trade practices claim against website for misappropriating confidential phone records, Court held that §230(c) bar did not apply, noting that the claim "does not sound in defamation").

As in *Lansing*, Internet Brand's duty to warn Jane Doe "is distinct from any conduct like editing, monitoring or removing offensive content published on the Internet." *Id*. The duty to warn alleged by Jane Doe "does not require publishing or speaking as a critical element", and "is not derived from any behavior by defendant that is similar to publishing or speaking." *Id*. Jane Doe's negligent failure to warn claim therefore falls outside the scope of §230(c)(1).

The district court attempted to distinguish *Lansing* on the basis that the defendant's duty in that case "derived from the defendant's status as an employer." (ER 8). As a result of this status, "the defendant had a duty to supervise its employee's conduct." (*Id*.) On this same basis, the district court asserted that *Barnes* is distinguishable because the defendant's duty "derived from an enforceable promise that the defendant had breached." (*Id*.) The district court failed to recognize, however, that, as in *Lansing* and *Barnes*, Internet Brands' common law duty is not dependent on its status as a "publisher" of content from others. The district court's conclusion to the contrary does not withstand scrutiny. Internet Brands had a common law duty to warn its users and customers of a known risk irrespective of its role as a publisher of third party content. Internet

Brands was in a special position of superior knowledge of a danger posed particularly to its customers. Its duty in this case derives from this relationship and superior knowledge, not from its role as a "publisher or speaker". As in *Lansing* and *Barnes*, Internet Brand's status as publisher of third party content is not proximately connected to the breach of the common law duty alleged in the Complaint. There is no basis in reason to distinguish the duty alleged in *Barnes* and *Lansing* from the duty alleged here as it concerns whether the defendant is being treated as a "publisher or speaker."

### III. CASES IN WHICH CLAIMS WERE BARRED UNDER THE CDA §230(c) ARE DISTINGUISHABLE

The torts alleged in the cases relied upon by the district court are readily distinguishable from the failure to warn alleged in this case. *See Julie Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (2009) ("*Doe II*"), and *Jane Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ("*Doe v. MySpace*") (discussed by district court at ER 7-8). *Doe II* and *Doe v. MySpace* involved essentially identical claims and reached the same result, barring suit under the CDA. In both cases, claims were brought against Myspace on behalf of minors who were sexually assaulted by persons whom they met through Myspace's web-based social network. *Doe II*, 175 Cal. App. 4th at 565, 96 Cal. Rptr. 3d at 150-51; *Doe v. MySpace*, 528 F.3d at 416. The plaintiffs in those cases alleged in their complaints that MySpace was liable for failing to implement measures to prevent

23

minors from communicating with strangers on its website. *Doe II*, 175 Cal. App. 4th at 569, 96 Cal. Rptr. 3d at 153-54; *Doe v. MySpace*, 528 F.3d at 420. In *Doe II*, the plaintiffs alleged "that MySpace should have implemented readily available and practicable age-verification software or set the default security setting on the Julie Does' accounts to 'private'". 175 Cal. App. 4th at 565, 96 Cal. Rptr. 3d at 151. The plaintiff argued in both cases that the CDA did not apply because their claims for failure to implement safety measures did not treat MySpace as a "publisher". The courts rejected this argument, finding that the allegation of a failure to implement safety measures was a thinly veiled attempt to challenge MySpace's website content:

> The appellants characterize their complaint as one for failure to adopt reasonable safety measures does not avoid the immunity granted by section 230. It is undeniable that appellants seek to hold MySpace responsible for the communications between the Julie Does and their assailants. At its core, appellants want MySpace to regulate what appears on its Web site. … That type of activity – to restrict or make available certain material – is expressly covered by section 230.

*Doe II*, 175 Cal. App. 4th at 573; 96 Cal. Rptr. 3d at 156-57; *accord Doe v. MySpace*, 528 F.3d at 420 (finding that the plaintiffs' "allegations are merely another way of claiming that Myspace was liable for publishing the communications and they speak to Myspace's role as a publisher of online third-party-generated content").

24

Here, Jane Doe does not claim that Internet Brands was negligent for failing to restrict or limit communications on its website. Rather, Plaintiff alleges that Internet Brands failed to warn its vulnerable members of a known danger of rape particular to those members. Unlike *Doe II* and *Doe v. MySpace*, Jane Doe's Complaint has nothing to do with communications or content that Internet Brands may or may not have allowed or "published" on its modelmayhem.com website. Rather, Internet Brands was in a unique position to warn its members of the rape scam and prevent harm. This duty to warn is separate and distinct from Internet Brands' role as a "publisher" of third party content.

In *Doe II*, the Court summarized the issue as follows:

> The real question, though, is whether appellants seek to hold MySpace liable for failing to exercise a publisher's traditional editorial functions, namely deciding whether to publish certain material or not. Because they do, section 230 immunizes MySpace from liability.

175 Cal. App. 4th at 573, 96 Cal. Rptr. 3d at 157. As discussed above, Jane Doe does not seek to hold Internet Brands liable for "deciding whether to publish certain material [from another content provider] or not." Her claim, consistent with *Doe II* and *Doe v. MySpace*, falls outside the scope of the CDA §230(c)(1).

25

## IV.   THE TORT CLAIM BROUGHT BY JANE DOE IS CONSISTENT WITH THE CDA

Aside from the tort claim of Jane Doe not treating Internet Brands as a "publisher or speaker", it is consistent with the purpose and policy of 47 U.S.C. §230.  Section 230(e)(3) of the CDA provides that

> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.  No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

One of the objectives of the CDA is to promote the "vibrant and competitive free market that presently exists for the internet. …" 47 U.S.C. §230(b)(2). In barring inconsistent state law and regulation, "Section 230 represents the approach of Congress to a problem of national and international dimension." *Zeran v. America Online, Inc.*, 129 F.3d 327, 333-334 (4th Cir. 1997).  Toward this end, the CDA seeks to provide protection to private blocking and screening of offensive material on the Internet:[8]

---

[8] The bar of Section 230(c)(1) of the CDA on claims treating an internet service provider as a "publisher or speaker" must be read in tandem with Section 230(c)(2), which bars claims against an "interactive computer service" that acts to restrict access to or censor content it in good faith "considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. §230(c)(2). This "safe harbor" was designed to further the legislative goal of protecting the private blocking and screening of offensive material.  *See* Lukmire, *Can the Courts Tame The Communications Decency Act?: The Reverberations of Zeran v.*

Section 230 was prompted by a state court case holding Prodigy responsible for a libelous message posted on one of its financial message boards. *See Stratton Oakmont, Inc. v. Prodigy Servs. Co.,* 1995 WL 323710 (N.Y. Sup. Ct May 24, 2995) (unpublished). The court there found that Prodigy had become a "publisher" under state law because it voluntarily deleted some messages from its message boards "on the basis of offensiveness and 'bad taste,' " and was therefore legally responsible for the content of defamatory messages that it failed to delete. . . . Under the reasoning of *Stratton Oakmont*, online service providers that voluntarily filter some messages become liable for all messages transmitted, whereas providers that bury their heads in the sand and ignore problematic posts altogether escape liability.

*Fair Hearing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008). The legislative intent of the CDA §230(c) was thus, in part, to allow an internet service provider to edit or not edit content from third parties without exposing itself to liability as a result:[9]

In passing section 230, Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on user-generated content without thereby becoming liable for all

*America Online*, 66 N.Y.U. Ann. Surv. Am. L. 371, 388-89 (2010) (discussed *infra*).

[9] "The starting point for interpretation of a statute is the language of the statute itself." *U.S. v. Buckland*, 289 F.3d 558, 564-65 (9th Cir. 2002) (citations omitted). Where this language is ambiguous or not dispositive, "we look to the legislative intent revealed in the history and purpose of the statutory scheme." *Id*. As discussed *infra*, neither the language of the statute, "treatment of publisher or speaker," nor its legislative history and purpose support the barring of Jane Doe's negligence claim in this case.

27

> defamatory or otherwise unlawful messages that they
> didn't edit of delete. In other words, Congress sought to
> immunize the *removal* of user-generated content, not the
> *creation* of content[.]

*Id*. (emphasis original).

*See also Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) (noting that §230(c) protects a "web host that *does* filter out offensive material," and "also blocks civil liability when web hosts and other Internet service providers … *refrain* from filtering or censoring the information on their sites") (emphasis original).

Moreover, the CDA §230 has been expansively interpreted since its enactment in 1996, and its application to bar causes of action outside of defamation and related torts marks the furthest extent of its reach. *See* Lukmire, *Can the Courts Tame The Communications Decency Act?: The Reverberations of Zeran v. America Online*, 66 N.Y.U. Ann. Surv. Am. L. 371 (2010). The principal legislative purpose in the enactment of Section 230 was to curb the transmission of indecent material on the Internet which could be viewed by children. *Id*. at 375. "The statute has grown into a 'judicial oak', with impacts far beyond its language sounding in defamation law and its original intent to prevent the nascent Internet from becoming a 'red light district.' "[10] *Id*. at 372. The district court's application

---

[10] While the Court's interpretation of the bar of §230(c) was expansive in *Zeran v. American Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), its reach only included within the "publisher or speaker" language a limited range of torts:

of the CDA §230 to bar Jane Doe's negligence claim "crosses the line" from liberal statutory interpretation into territory entirely unmoored by statutory language and legislative history. Internet Brands' treatment of third party content is collateral and tangential to Jane Doe's claim, such that to bar this claim is to take §230(c)(1) into the realm of complete immunity rejected by the Court in *Barnes*. 570 F.3d at 1101-09.

Jane Doe's negligent failure to warn cause of action does not compel, nor implicate in any way, the filtering or censoring of information or content from third parties on modelmayhem.com. Flanders and Callum are not alleged to be responsible for any content on modelmayhem.com. It is not alleged that Internet Brands should have engaged in any filtering or censoring of content from third parties. This negligence claim does not impede, interfere with or otherwise touch on the promotion of unfettered speech on the Internet. Rather, Plaintiff's claim seeks to hold Internet Brands liable for its failure to warn of a known danger.

---

The *Zeran* court, interpreting section 230 in light of free-speech and Internet-development concerns, likely construed the statute to include a grant of immunity against those publication-based torts – false light invasion of privacy and infliction of emotional distress – that are sometimes treated as "cousins" of defamation law because the harms suffered are analogous and because they also implicate speech interests.

Lukmire, 66 N.Y.U. Ann. Surv. Am.L. at 396.

Nothing about Plaintiff's claim affects third party content, and thus §230(c) does not come into play. Accordingly, Jane Doe's cause of action should not have been dismissed.

## CONCLUSION

Based on the foregoing, Jane Doe respectfully requests that the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) be reversed, and this case remanded for further proceedings.

> By: s/ Stuart S. Mermelstein
> Jeffrey Herman
> Stuart S. Mermelstein
> HERMAN LAW
> *Attorneys for Jane Doe No. 14*
> 3351 NW Boca Raton Boulevard
> Boca Raton, FL 33431
> Tel: 305-931-2200
> Fax: 561-395-0910

## STATEMENT OF RELATED CASES

Pursuant to 9th Cir.R. 28-2.6, Appellant's counsel states that he is unaware of any related case pending in this Court.

> s/ Stuart S. Mermelstein
> Stuart S. Mermelstein