**No. 12-56638**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JANE DOE NO. 14,
*Plaintiff-Appellant,*
v.

INTERNET BRANDS, INC., D/B/A
MODELMAYHEM.COM,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
D.C. Case No. 12-cv-03626-JFW-PJW

## PLAINTIFF-APPELLANT'S RESPONSE TO PETITION FOR
## REHEARING AND REHEARING EN BANC

HERMAN LAW
Jeff Herman
Stuart S. Mermelstein
*Attorneys for Jane Doe No. 14*
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
Tel: 305-931-2200
Fax: 305-931-0877

December 23, 2014

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT .......................................................................................2

I. THE PETITION FAILS TO MEET THE HEAVY BURDEN FOR REHEARING OR REHEARING EN BANC......................................... 2

    A. Petition for Panel Rehearing ................................................2

    B. Petition for En Banc Rehearing.............................................3

II. INTERNET BRANDS DISINGENUOUSLY ATTEMPTS TO MANUFACTURE AN "UNBRIEFED" ISSUE THAT DOES NOT SERVE AS A BASIS FOR REHEARING ............................................. 5

III. THE PANEL OPINION DOES NOT OVERLOOK THE DUTY ARISING FROM A "SPECIAL RELATIONSHIP" ALLEGED IN THE COMPLAINT ..................................................................... 7

    A. Internet Brands' "Special Relationship" Argument is Impermissibly Raised for the First Time in the Petition for Rehearing.........................................................................8

    B. The Panel Does Not Overlook the Duty Arising from a "Special Relationship" Alleged by Jane Doe and its Implications Under the CDA.................................................................................9

IV. THE PANEL'S OPINION IS NOT IN CONFLICT WITH ANY COURT OF APPEALS DECISIONS ..................................................... 10

V. *BECKMAN V. MATCH.COM* DOES NOT SUPPORT GENERAL IMMUNITY UNDER THE CDA .......................................................... 12

VI. THE PANEL'S OPINION DOES NOT BY ANY STRETCH OPEN THE FLOODGATES TO HARMFUL LAWSUITS............................... 13

CERTIFICATE OF SERVICE .............................................................19

CERTIFICATE OF COMPLAINCE.......................................................19

i

# TABLE OF AUTHORITIES

CASES

Armster v. United States District Court for the Central District of California, 806 F.2d 1347 (9th Cir. 1986) ...............................................................2, 3

Barnes v. Yahoo!, Inc., 570 F.3d 1096 (9th Cir. 2009) ............................ 1, 3, 10, 11

Beckman v. Match.com, 2013 U.S. Dist. LEXIS 78339 (D. Nev. 2013), *appeal pending*, no. 13-16324 (9th Cir.) ................................................. 12, 13

Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008) ...................................... 14, 15

Easley v. Reuss, 532 F.3d 592 (7th Cir. 2008) ..........................................................2

Ecological Rights Foundation v. Pacific Gas & Elec. Co., 713 F.3d 502 (9th Cir. 2013) ...............................................................................................7

Fair Housing Council v. Roomates.Com, LLC, 521 F.3d 1157 (9th Cir. 2008) .......1

George v. Morris, 736 F.3d 829 (9th Cir. 2013).......................................................7

Green v. America Online, Inc., 319 F.2d 465 (3d Cir. 2003)........................... 14, 15

Vincent v. Trend Western Tech Corp., 828 F.2d 563 (9th Cir. 1987)......................7

STATUTES

47 U.S.C. §230 ................................................................................... passim

OTHER AUTHORITIES

RESTATEMENT (SECOND) of TORTS §314A .................................................7, 8

RESTATEMENT(SECOND) OF TORTS §388 ....................................................14

RULES

Fed. R. App. P. 40 ....................................................................................................2

## SUMMARY OF ARGUMENT

The arguments for rehearing ignore two basic and essential points recognized and addressed in the panel's opinion:

1. The Communications Decency Act (CDA), 47 U.S.C. §230, does **not** provide to internet service providers "a general immunity from liability deriving from third party content." Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100 (9th Cir. 2009); and

2. The panel's opinion carefully adheres to precedent in this Circuit, particularly Barnes and Fair Housing Council v. Roomates.Com, LLC, 521 F.3d 1157, 1163 (9th Cir. 2008). There is no cogent argument that the panel's opinion conflicts with this precedent.

The arguments of Appellee and Amici Curiae, contrary to the reasoning and holding in Barnes, require application of a general or blanket immunity from liability to interactive computer services deriving from publication of third party content. According to these arguments, the mere publication by Internet Brands of Jane Doe's profile on modelmayhem.com requires application of the CDA to bar her claim, which is squarely at odds with Barnes. (See Panel Opinion, pp. 11-12).

The arguments raised do not otherwise support the extraordinary circumstances and exacting standard required for panel rehearing or rehearing en banc. The panel did not overlook or misapprehend any material issue or point.

1

Rehearing en banc is unwarranted as there is no conflict with any decision of the United States Supreme Court, the Ninth Circuit Court of Appeals, or other United States Courts of Appeal; nor does this proceeding and its unique fact pattern present a question of exceptional importance warranting en banc review. Indeed, the panel's opinion carefully follows Ninth Circuit precedent; it is the arguments for rehearing that would require deviation from this precedent and expansion of the CDA's reach beyond its plain meaning.

## ARGUMENT

### I.   THE PETITION FAILS TO MEET THE HEAVY BURDEN FOR REHEARING OR REHEARING EN BANC

#### A. Petition for Panel Rehearing

"A properly drawn petition for rehearing serves a very limited purpose." Armster v. United States District Court for the Central District of California, 806 F.2d 1347, 1356 (9th Cir. 1986). Under Fed. R. App. P. 40(a)(2), this limited purpose is to review points of law or fact that the panel "has overlooked or misapprehended". "As suggested by the rule, petitions for panel rehearing should alert the panel to specific factual or legal matters that the party raised, but that the panel may have failed to address or may have misunderstood." Easley v. Reuss, 532 F.3d 592, 593-94 (7th Cir. 2008). Absent extraordinary circumstances, this review does not encompass reargument of points considered and addressed in the panel's

2

opinion, nor does it contemplate new arguments raised for the first time in the petition.  See id.; Armster, 806 F.2d at 1356 ("[t]he purpose of petitions for rehearing, by and large, is to ensure that the panel properly considered all relevant information in rendering its decision").

Much of the arguments raised by Internet Brands and Amici Curiae either (i) do nothing more than express dissatisfaction with the analysis and decision of the panel, failing to raise any point of fact or law that the panel in fact overlooked of misapprehended; or (ii) raise an issue that was not raised in the district court or in briefing the appeal.  Such arguments are not properly considered on a petition for rehearing.

## B. Petition for En Banc Rehearing

En banc rehearings have an even more limited purpose:  "[R]ehearings en banc are designed to address issues that affect the integrity of the circuit's case law (intra circuit conflicts) and the development of the law (questions of exceptional importance)."  Easely 532 F.3d at 594.  The panel's opinion carefully analyzes and follows Barnes, and is consistent with other Ninth Circuit precedent.  The attempt of Amici Curiae to claim an expansive reach for the panel's opinion that would supposedly be detrimental to all internet service providers is disingenuous and does not withstand scrutiny.

The panel's opinion does not open the door to a broad duty to warn of generally known risks involved in networking, dating or otherwise posting content on social media. As the panel's opinion recognizes, in this case, Internet Brands knew the details of a particular scheme used by two individuals, Lavant Flanders and Emerson Collum, in which female members of Internet Brands' modelmayhem.com website who posted profiles were lured to South Florida under false pretenses and then drugged and raped in the making of pornographic videos. (Panel Opinion, pp. 4-5, 8-9). There is nothing in the panel's opinion to indicate that its holding could be applied to create a *general* duty to warn stretching beyond the particular facts of the horrific scheme that Internet Brands knew targeted members of modelmayhem.com. As a result, any claim of "exceptional importance" to this proceeding rings hollow. En banc proceedings "are reserved for the truly exceptional cases." Easley, 532 F.3d at 594. While a particular application of the CDA to the facts of this case may be novel, the panel opinion reflects a straightforward application of Barnes, is not in conflict with any Court of Appeals' decisions, and therefore does not raise an issue of exceptional importance for purposes of Fed. R. App. P. 35(b).

4

## II. INTERNET BRANDS DISINGENUOUSLY ATTEMPTS TO MANUFACTURE AN "UNBRIEFED" ISSUE THAT DOES NOT SERVE AS A BASIS FOR REHEARING

Internet Brands attempts to raise a "phantom" issue that was purportedly unbriefed, which reflects nothing more than its own misreading of the Complaint and, as the panel's opinion makes clear, is immaterial to its decision. According to Internet Brands, Appellant for the first time at oral argument represented that the perpetrators, Flanders and Callum, never posted any content on modelmayhem.com. In fact, this point was clearly asserted in Appellant's Brief. In any event, in raising this issue Internet Brands fails to address any point of fact or law that the panel overlooked or misapprehended.

Appellant's Brief unequivocally states that "Flanders and Callum are not alleged to be responsible for any content on modelmayhem.com." (CR 8, p. 29). The panel's opinion also notes that there is no allegation in the Complaint that Flanders and Collum posted their own content on the modelmayhem.com website:

> Unbeknownst to Jane Doe, two persons, Lavont Flanders and Emerson Callum, were using Model Mayhem to identify targets for a rape scheme, allegedly as early as 2006. **Flanders and Callum are not alleged to have posted their own profiles on the website**. Instead, they browsed profiles on Model Mayhem posted by models, contacted potential victims with fake identities posing as talent scouts, and lured the victims to south Florida for modeling auditions.

5

(Panel Opinion, p. 4) (emphasis supplied) (<u>see also</u> <u>id</u>., p. 11). In this manner, the perpetrators contacted Jane Doe:

> In February 2011, Flanders, pretending to be a talent scout, contacted Jane Doe, in the words of the Complaint, "through Model Mayhem."

(<u>Id</u>., p. 5). While Internet Brands chooses to read this allegation as the perpetrators posting their own content on the website,[1] such a reading is by no means compelled or warranted from the context and it cannot reasonably be argued that the point was "unbriefed". Indeed, Internet Brands stated in Appellee's Brief its position and understanding that Flanders and Callum posted no content on its website. (CR 26, p. 2, n. 2).

More importantly, the panel expressly considered and addressed the issue raised by Internet Brands, and found that it did not affect its decision:

> Broadly speaking, Internet Brands was an "intermediary" between Jane Doe and the rapists, but there is no allegation that Model Mayhem transmitted any potentially harmful messages between Jane Doe and Flanders or Callum. There is also no allegation that Flanders or Callum posted their own profiles on the website.
>
> ***In any case, that Internet Brands was in some sense an "intermediary" between Jane Doe and the rapists does***

---

[1] Needless to say, Internet Brands reading of the Complaint as implying the posting of content by the perpetrators is self-serving as Internet Brands apparently perceived this to place it in a stronger position in the appeal. (CR 26, p. 2, n. 2). Internet Brands thus seeks to use its own strategic decision disingenuously to argue that there was an "unbriefed" issue decided by the panel.

> ***not mean that the failure to warn claim treats Internet***
> ***Brands as the publisher or speaker of user content.***

(Panel opinion, p. 11)[2] (emphasis supplied).  In support of a panel rehearing, it was

incumbent upon Internet Brands to demonstrate that the panel overlooked or

misapprehended this point.  The panel plainly considered and addressed this issue,

which was not in any sense overlooked or misapprehended.[3]

### III.   THE PANEL OPINION DOES NOT OVERLOOK THE DUTY ARISING FROM A "SPECIAL RELATIONSHIP" ALLEGED IN THE COMPLAINT

Internet Brands contends that "the panel overlooked that the alleged *duty* here

is unavoidably based on Internet Brands' status as publisher of Plaintiff's profile."

(Petition, p. 10) (emphasis original).  This argument is premised on the "special

relationship" underlying the duty element of Plaintiff's failure-to-warn claim

pursuant to RESTATEMENT (SECOND) OF TORTS §314A: "[A]ny argument that the

---

[2] This passage belies Amici Curiae's assertion that "[t]he panel apparently assumed that, for Section 230 to protect Internet Brands, the assailants' fraudulent response to Doe's profile needed to flow through a computer system operated by Internet Brands."  (Amici Brief, p. 9).

[3] None of the cases relied upon by Internet Brands involved petitions for rehearing, and they are therefore inapposite.  See George v. Morris, 736 F.3d 829, 837 (9th Cir. 2013) (summary judgment issue); Vincent v. Trend Western Tech Corp., 828 F.2d 563, 570 (9th Cir. 1987) (issue whether district court abused its discretion in denying leave to amend); Ecological Rights Foundation v. Pacific Gas & Elec. Co., 713 F.3d 502, 511 (9th Cir. 2013) (dismissing complaint).

risk at issue here arose within the *scope* of the alleged special relationship unavoidably rests on Internet Brands' status as publisher of Plaintiff's content." (Petition, p. 12) (emphasis original). For purposes of the petition for rehearing, Internet Brands' argument fails because it is raised for the first time in the Petition, and in any event the issue was considered and addressed in the panel's opinion.

### A. Internet Brands' "Special Relationship" Argument is Impermissibly Raised for the First Time in the Petition for Rehearing

Internet Brands argued in its Appellee's Brief that it did not have a duty to warn, but that in any event "the CDA provides immunity to web-based service providers for common law torts committed by website users." (CR 13, pp. 4, 10). It did not argue, as it does in the Petition, that the alleged breach of duty arising from a "special relationship" under RESTATEMENT (SECOND) OF TORTS §314A is what places Jane Doe's claim within the scope of CDA immunity. Absent extraordinary circumstances, "[p]anel rehearing is not a vehicle for presenting new arguments." Easley, 532 F.3d 593-94. (citing cases from multiple courts stating that an issue may not be raised for the first time on petition for rehearing). Accordingly, Internet Brands cannot be heard to argue on rehearing that the "special relationship" alleged in Jane Doe's failure-to-warn claim gives rise to CDA immunity.

8

## B. The Panel Does Not Overlook the Duty Arising from a "Special Relationship" Alleged by Jane Doe and its Implications Under the CDA

The panel's opinion recognizes that Jane Doe's failure-to-warn claim is based on a "special relationship": "Jane Doe alleges that Internet Brands had a cognizable 'special relationship' with her and that its failure to warn her of Flanders and Callum's rape scheme caused her to fall victim to it." (Panel Opinion, p. 6). It expressly holds that, despite the allegation of a "special relationship" for purposes of establishing a legal duty, the Complaint does not treat Internet Brands as a publisher or speaker of third party content within the meaning of the CDA, 47 U.S.C. §230(c)(1):

> Jane Doe's failure to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit or remove user generated content. The theory is that Internet Brands should be held liable, based on its knowledge of the rape scheme and its "special relationship" with users like Jane Doe, for failing to generate its own warning.

(Panel Opinion, p. 10). The panel's opinion does not, as Internet Brands' contends, myopically focus on "but-for" causation and ignore the duty element of Plaintiff's claim. The panel plainly considers both. (See Panel Opinion, pp. 11-12). The panel's discussion of "but-for" causation is addressed to Internet Brands' principal argument, that Jane Doe's claim arises from her posting a user profile which, by

itself, cloaks Internet Brands with CDA immunity. The panel holds that this argument is tantamount to the blanket or general immunity rejected in <u>Barnes</u>:

> Publishing activity is a but-for cause of just about everything Model Mayhem is involved in. It is an internet publishing business. Without publishing user content, it would not exist. As noted above, however, we held in <u>Barnes</u> that the CDA does not provide a greater immunity against all claims derived from third-party content. In that case . . . we reversed the dismissal of a claim for promissory estoppel . . .. The publication of the offensive profile . . . was a "but-for" cause there, as well, . . . [b]ut that did not mean that the CDA immunized the proprietor of website from all potential liability.

(Panel Opinion, p. 12). The panel thus applies the reasoning set forth in <u>Barnes</u>, and in doing so did not overlook or misapprehend the element of duty in Jane Doe's failure-to-warn claim.

## IV.   THE PANEL'S OPINION IS NOT IN CONFLICT WITH ANY COURT OF APPEALS DECISIONS

The Petition fails to contain the statement required under Fed. R. App. P. 35(b)(1)(A) or (B), that either "the panel decision conflicts with a decision of the United States Supreme Court" or of the Ninth Circuit, or that it involves a question of great public importance concisely stated, such as, for example, conflict "with the authoritative decisions of the other United States Courts of Appeals that have addressed the issue." (<u>See</u> Petition, pp. 1-3). The Petition should be rejected and denied for this reason alone.

10

Neither Internet Brands nor Amici Curiae can point to any decision of the Ninth Circuit or other Court of Appeals that is in conflict with the panel's decision. Indeed, in arguing that there is such a conflict, Internet Brands asserts that "[e]very prior court to consider the issue has held that a website operator's publication of a user's profile or contact information – be it the victim's or the perpetrator's – is sufficient to trigger the CDA's protections." (Petition, p. 13). In other words, according to Internet Brands, every other court has upheld a general immunity to a website operator based solely on its publication of user content. This statement is belied by the plain language of <u>Barnes</u>, 570 F.3d 1096 (9th Cir. 2009). There, the Court held that the publication of user content does not trigger general immunity under the CDA: "[I]t appears clear that neither this subsection [§230(c) of the CDA] nor any other declares a general immunity from liability arising from third party content . . .." <u>Id</u>. at 1100. The Court focused on the "publisher or speaker" language of the CDA §230(c)(1), and noted that "publication involves reviewing, editing and deciding whether to publish or withdraw from publication third party content. . . ." <u>Id</u>. at 1101-02. Under this analytical framework, the claim for promissory estoppel in <u>Barnes</u> was not barred by the CDA, even though it arose from the publication of user content. <u>Id</u>. at 1107-09.

The panel's opinion adheres to the <u>Barnes</u> analytical framework in reaching the conclusion that the CDA does not bar Jane Doe's failure-to-warn claim. (Panel

Opinion, pp. 11-12). There is certainly no argument that <u>Barnes</u> conflicts with other decisions of this Court or the decisions of any other Courts of Appeals. The assertion of a conflict by Internet Brands and Amici Curiae is nothing more than an attempt to reargue the points made on appeal which were fully addressed in the panel's opinion.[4]

## V.   *BECKMAN V. MATCH.COM* DOES NOT SUPPORT GENERAL IMMUNITY UNDER THE CDA

Amici Curiae assert that Jane Doe's claim is the "paradigm" of a claim that impermissibly seeks to treat an internet service as a publisher or speaker, citing to <u>Beckman v. Match.com</u>, 2013 U.S. Dist. LEXIS 78339 (D. Nev. 2013), *appeal pending*, no. 13-16324 (9th Cir.) (Amici Brief, p. 8). A review of <u>Beckman</u> exposes the fallacy of this argument. There, the plaintiff was brutally attacked by a man she met through posting a profile on match.com. The district court found that, in this context, the alleged failure to warn treated match.com as a "publisher or speaker"

---

[4] On this point, Amici Curiae do nothing more than assert that other courts have recognized the "broad protection" provided by the CDA §230 to internet service providers which is in contrast to the panel's "narrow construction of Section 230." (Amici Brief, p. 10). Aside from these vague and dubious generalities, Internet Brands and Amici Curiae fail to point to language in any court decision that conflicts with any portion of the panel's decision.

within the meaning of the CDA because it was necessarily addressed to content on another user's profile:

> Match.com is a website that publishes dating profiles. There is nothing for Match.com to negligently misrepresent or negligently fail to warn about ***other than what a user of the website may find on another user's profile on the website***. Plaintiff may attempt to focus the alleged wrongdoing on Match.com, but what plaintiff is actually alleging is that she was eventually harmed because of third-party content published by Match.com on its website.

<u>Id</u>. at *13 (emphasis supplied). The failure to warn alleged by Jane Doe is readily distinguishable. It is not addressed to any profile or content provided by a third party to modelmayhem.com. Rather, ***independently of any website posting or content***, Internet Brands learned that its female users were targets in a scam that posed a particularly heinous danger to them. Unlike the plaintiff in <u>Beckman</u>, Jane Doe does not allege that she was harmed because of content posted on modelmayhem.com.

## VI.   THE PANEL'S OPINION DOES NOT BY ANY STRETCH OPEN THE FLOODGATES TO HARMFUL LAWSUITS

The Brief of Amici Curiae is laden with dangerous hyperbole. It is dangerous because it serves only to cloud and confuse the real facts and issues. Amici Curiae do not merely exaggerate the potential effects of the panel's opinion, but they misstate or mischaracterize the panel's opinion. For example, Amici Curiae assert that "[t]he panel opinion could open the door to negligent failure-to-warn claims that

13

would seek to impose liability on service providers in situations that courts have
previously held to be within the scope of Section 230's protection." (Amici Brief, p.
13). As examples for this proposition, Amici Curiae refer to Doe v. MySpace, Inc.,
528 F.3d 413 (5th Cir. 2008), and Green v. America Online, Inc., 319 F.2d 465 (3d
Cir. 2003). The facts alleged in those cases, however, would not support a failure-
to-warn claim comparable to that alleged by Jane Doe.

In MySpace, a 13-year old female was sexually assaulted by a 19-year old
male after they made contact on the defendant's interactive computer service,
MySpace. There was no allegation, as here, that the 19-year old perpetrator posed a
particular danger to the plaintiff and others like her that was independently within
the knowledge of MySpace. There were thus no facts known to MySpace that would
give it superior knowledge of a particular danger that could serve as the basis for a
duty to warn. Amici Curiae nonetheless contend that the plaintiff in that case "could
just as easily have alleged that MySpace had failed to warn its users that they could
be sexually assaulted by third parties whom they met through the website." (Amici
Brief, p. 13). Such a general warning of an obvious danger could not suffice for
purposes of a duty to warn in tort. See RESTATEMENT (SECOND) OF TORTS §388
(comments on clauses (b) and (c)) (stating that the duty to warn of one who supplies
chattels is addressed to "dangers which are particularly within [the supplier's]
knowledge", and apply "if, but only if, he has no reason to expect that those for

14

whose use the chattel is supplied will discover its condition and realize the danger involved"). Similarly, in <u>Green</u>, the plaintiff alleged that America Online (AOL) failed to take action against third party content providers who allegedly transmitted harmful malware to plaintiff through AOL. The notion that the panel's opinion would open the door for the plaintiff in <u>Green</u> to bring a claim for having not "adequately warned him of the risk of malware attacks" is likewise spurious.

Moreover, the failure to warn alleged in this case by Jane Doe is not addressed to any third party content, as it would be in <u>MySpace</u> or <u>Green</u>. The panel's opinion makes this clear:

> Instead, Jane Doe attempts to hold Internet Brands liable for failing to warn her about how third parties targeted and lured victims through Model Mayhem. The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes such content. Any obligation to warn could have been satisfied without changes to the content posted by the website's users. Internet Brands would simply have been required to give a warning to Model Mayhem users, perhaps by posting a notice on the website or by informing users by email what it knew about the activities of Flanders and Callum.

(Panel Opinion, pp. 8-9). As a result, the panel's opinion does not implicate the decision of an internet service provider to edit or not edit third party content. Amici Curiae thus wrongly assert that the panel's opinion would "discourag[e] companies from policing harmful third-party activity because doing so may create knowledge

of a particular risk that could be used against the company in litigation." (Amici Brief, p. 14). If an internet service provider learns of a particular danger through policing third party content, its decision on whether or not to publish that content is unquestionably protected by the CDA, and nothing in the panel's decision would interfere with that immunity. In that instance, immunity could not be avoided through an attempt to couch the claim in the form of a duty to warn. That is not what is occurring in this case. Jane Doe alleges that Internet Brands had superior knowledge of the particular facts of an abhorrent scam targeting its members. Internet Brands not only failed to warn its members vulnerable to this scam, at the same time it sought to profit from it by bringing litigation against the seller of the modelmayhem.com website in an effort to renegotiate the purchase price. Under these particular circumstances, harm could be avoided only through an appropriate warning, informing female modelmayhem.com members of the danger. Removing third party content in this case would not have ameliorated the danger or avoided the harm. The "essential nature" of Plaintiff's claim is thus a failure to warn; there is simply no "artful pleading" of a failure-to-warn claim in this case to avoid the CDA. (See Amici Brief, p. 7).

There is further no basis for Amici Curiae's assertion that, in response to the panel's decision, internet service providers would curtail services in a manner that would impair the free flow of information. (Amici Brief, p. 15). According to Amici

Curiae, social media platforms which facilitated, for example, the Occupy Wall Street Movement, and the ALS Ice Bucket Challenge, would be chilled by the threat of liability arising from the panel's opinion. This suggestion is ludicrous. The panel's opinion cogently addresses this argument: "Congress has not provided an all purpose get-out-of-jail-free card for businesses that publish user content on the internet, though any claims might have a **marginal** chilling effect on internet publishing businesses." (Panel Opinion, p. 11) (emphasis supplied). The effect of the panel's opinion is "marginal", without the "far-reaching implications" asserted by Amici Curiae, because the failure-to-warn alleged by Jane Doe does not address any third party content: "The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes such content." (Panel Opinion, p. 8). As a result, with all due regard for the enormous volume of third-party content intermediated by Amici Curiae internet service providers, there is no reason whatsoever to expect that their activities will in any way be altered or chilled by the panel's decision. (See Amici Brief, p. 18). The "doomsday" scenario presented by Amici Curiae is therefore a concoction.

The true "doomsday" scenario is presented by the general immunity rule advocated by Internet Brands and Amici Curiae, in which internet service providers would in every instance be absolved of any duty arising from superior knowledge of

17

a particular danger to their customers. As <u>Barnes</u> recognizes, such a general immunity is unwarranted based solely on their role as internet intermediaries. It would result in a disincentive to act in a safe manner, with potentially horrible consequences for their customers. Accordingly, the panel's opinion rejecting such a general immunity does not give rise to an issue of exceptional importance for en banc review.

Respectfully submitted,

By: s/ Stuart S. Mermelstein
Jeffrey Herman
Stuart S. Mermelstein
HERMAN LAW
*Attorneys for Jane Doe No. 14*
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
Tel: 305-931-2200
Fax: 305-931-0877

18

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 23, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Stuart S. Mermelstein

## CERTIFICATE OF COMPLAINCE

I certify, pursuant to Ninth Circuit Rules 35-4 and 40-1, that the attached Plaintiff-Appellant's Response to Petition for Rehearing and Rehearing En Banc is proportionally spaced, has a typeface of 14 points, and contains 4197 words, which is less than the 4200 words permitted by Ninth Circuit Rule 40-1(a).

Dated:  December 23, 2014.

s/ Stuart S. Mermelstein

19